Today is Daryl Dunham v. J. Howd. Marcus, how do you spell his name? It's Herbert, H-E-R-B-E-R-T. Okay, Herbert, yes, thank you. You may proceed. Mr. Policeman, the court. On a certain day after a bankruptcy hearing, and it was the last hearing of the day, the proceedings had closed and the people were picking up their papers to leave the room. The court was not in session at that point. And the defendant in this case, Mr. Howd, made some comments that were not taped because the record stopped tapering. That the appellant, Mr. Dunham, was a liar and a cheat. Those comments were witnessed by the person who conducted the hearing, the trustee. That person had conducted hundreds and hundreds of hearings that were Dunham's cases and Howd's cases. Mr. Dunham was my business partner. Those statements were also witnessed by the last client that was my client of the day and the lawyer that was present that we had hired to represent the client that was appearing for me on that day. Later on, we had spoken or communicated with Mr. Howd. We found that to be defensive, and he reissued the statements in a letter form and sent that letter, circulated that letter. That's part of what's alleged in the complaint that we're complaining about. We're saying that that raises to be a complainable set of facts under defamation, slander, and libel because of the written letter. And that it also violates the Deceptive Trade Practices and the Antifa Business Practices Act. Did you say defamation, slander, and libel? You only had count one, didn't you? They're grouped together in that there's the same statements. One was made verbally, and one was made in this written letter. Okay. In reading the complaint, it seems that the trial judge dismissed it on a 2-615 motion. Is that correct? That's correct. So that would be insufficient allegation of bleeding? Yes, Your Honor. So you're lumping together slander. It says defamation in the complaint, I believe. Yes, Your Honor. And was that defamation per quod or defamation per se? Per se. Because that wasn't mentioned. Do you think there was any kind of privilege that attached to Mr. Howd at the time the statement was made? No, Your Honor, I do not. Why? They were relying on what's a fair report privilege. A fair report privilege? Yes, which we would most know from newspaper reporters, but it's not restricted to newspaper reporters. The fair report privilege requires that the report of what had happened be a fair It doesn't have to be verbatim. It has to be a fair summary that has the essential bite, the essential thrust of what happened. It has to not be misleading. If there's relevant facts that are omitted that would change the bite or the thrust of it, then it would not be a fair report. But wasn't this quote from a transcript? It was stated in the quote that it's from a transcript, and there is a transcript that says it. It's not clear whether he had possession of the transcript at the moment and was reading it verbatim or if he had it memorized. So the comments that were made were out of some kind of transcript, a legal transcript. They purport to be, and they come very close to what the transcript says. Except, I think, for the word cheating. Yes. And so why wouldn't there be a privilege to the language that was in the transcript? When you're aware of the privileges that lawyers have when they're in the courtroom or they file pleadings. Yes, Your Honor. Do you think that there was any privilege that's attached to those words because they were in a transcript? Well, if the thrust behind the question is whether the judge who iterated those statements would be privileged, I would say absolutely. We're not bringing anything against the judge. Right. So if the judge was privileged, why not the lawyer? Because it's not a fair report of what happened. What makes it unfair is that the certain facts were omitted that slammed it and that changed the bite of what's being complained about. For example, the fact that it happened 12 years earlier in a motion to recuse a judge, but that was not disclosed in this iteration. That I'm quoting from a motion to recuse a judge, which Mr. Dunham was granted. He won his motion. But that fact wasn't iterated in there. It made it sound like it was a contemporary thing. Also, the quote said, quoting from the last page of his opinion, this was not an opinion. This was a transcript of a proceeding on a motion to recuse. A motion, however, that had many things, many cases, one after another. This was not an opinion. This was not considered. By using the language, quoting from the last page of the opinion, that changed the slam and would imply in our society and certainly in the legal world that this is an opinion about the matters that we're talking about. That somehow this was a proceeding against Dunham and that there had been fact-finding or an opportunity to disclose facts, some evidentiary proceeding. This was not a proceeding against Dunham. There was no opportunity to offer facts that had anything to do with Dunham being a liar. There was no accusation against him that he was replying to. He was given no opportunity to reply. What this was was the – obviously, the judge was at a heated moment and said what was on his mind. But the way that this is reported sort of impliably makes it look like it's a proceeding against Dunham and it's a considered opinion and that it's a written thing where he had an opportunity to offer facts or evidence. And that's just not at all what it was. And thus it was 11 to 12 years later. Why is that important if it's out there in the public record? Why is it important? The time lapse? Yeah. I mean if it's in the public record, it's out in the public realm, right? Well, part of the fair or poor privilege is it has to be a matter of public concern. And I don't think that this is of any public concern at all after 12 years on a motion to recuse a judge. A matter of public concern, what has to be a matter? The privilege? In order for the privilege to apply, the report is supposed to be about something of a matter of public concern. But before you reach the privilege, though, don't you have to reach the elements of the cause of action? I mean you file a complaint that says slander, but the count says defamation. So first you have to reach the elements of one or the other, right? And then somebody's going to raise a privilege as a defense. Yes, Your Honor. But I was a little confused about the pleadings because the motion to dismiss was a 2-615, which is insufficient pleadings. I'm not sure how to answer that. Okay. Where do you think the actual malice was in this case? I think the—my own opinion about it, I don't know that it's relevant, but I think that this is a matter of competitors who personally don't like one another. But why we think this is important, and it's more than just a petty dispute between two lawyers, is because we have reason to believe that this kind of thing has been going on for 12 years, and we haven't been able to put a stop to it through efforts such as this. And it matters, it obviously matters to an attorney, what his reputation is in the community. Especially in matters of whether they're a cheater, a liar, or reliable, and what judges think of them. Those things would matter to an attorney. But is it true Mr. Howd is retired? No. Both lawyers are still practicing. And why did the letter go out? What was that about? Well, it's difficult to answer because I'm being asked why somebody else did something. On the face of it, I think that the letter was to justify why, when we sent him a letter that says, please stop doing this, we find this to be wrong and offensive. He's justifying, this is acceptable behavior, I'm allowed to do this, I can do this all day long from now on, because I have this transcript, and I'm reporting what the transcript says. And as long as I'm just not making it up myself and truthfully saying that this other person said this thing, then I have free reign to continue this on. And that's part of why we took this so seriously. Because we interpreted from that letter that he believes that this is acceptable behavior, and he has the free right to continue it on ad infinitum. Your Honor expressed some concern about the confusion over the pleadings for the use of the word defamation. I drafted the pleading, I apologize if it was incorrect, but my understanding of the law was defamation is a broader umbrella that incorporates slander as well as libel. If it's a spoken false statement, then we call it slander, otherwise we call it libel. And since we had some of each, same exact statements, but just one's written and one's verbal, I thought they were both falling into the rubric of defamation. Why? I'm just asking the questions. Okay, well, I thought I owed you an answer on that. Thank you. Another thing that's very important is how, in appearing at that 341 meeting that bankers had received, he was not engaged in the practice of law. He wasn't there with the client. He showed up on his own. He didn't have a client. He wasn't representing a predator in that case. He didn't enter his appearance in that case. He had no business before the court in that case prior to that point or after that point. He never filed anything having to do with it, and he didn't question that client. He just gratuitously showed up, and when that opportunity presented itself to make those comments, he did. And that, I think, is critical because this court has issued an opinion that says under the Fair Business Practices Act that lawyers aren't covered if they're acting within the scope of employment. So if somebody had a dispute with their own lawyer over billing, for example, they couldn't bring that under Fair Trade or under a Deceptive Business Practices Act because the lawyers are separately regulated in the practice of law. And so accepting the bona fides of that opinion, I just think it's distinguishable from these facts because this lawyer in this instance, what we were complaining about, was not engaged in the practice of law. It was just, it could have been any person standing up there saying this person's a liar and this person's a cheat. And ostensibly the purpose of that looks like it's to gain a competitive advantage or to be a little of the victim of the comments in the eyes of, or in the ears of people hearing it. But that's not the practice of law. Have you ever seen a case that uses the Consumer Fraud Act or the Deceptive Trade Practices Act against a lawyer? I don't have one that I could cite to you at the moment. What is it about those two acts that make you feel or believe that this conduct fell within those two acts? They have extremely similar language in them about different things that would constitute a violation of the act. And that language in this narrow instance is when someone makes a misstatement or an omission concerning something that would mislead the public as to the quality or character of someone's goods or services. Well, we think that this is directly on point, that this is speaking to the quality of someone's services, whether they're a liar or a cheat, especially if you're an attorney, where that's your stock and trade, that's your integrity, and that's been impugned. Well, to the extent that that's broadcast, the more it's broadcast, it definitely affects the consuming public of legal services. But doesn't the law on that now say that you have to show reliance and damages, approximate cause, in order to recover under those statutes? Assuming for the moment that a lawyer could be found to be liable under that, you've just told me that Mr. Happ wasn't even there for any client or nobody was there for him to represent. So how do you find reliance and approximate cause and damages? I don't know that those are required under those consumer laws. Okay. And one of the remedies that's available is an injunction to prevent more of the same, which is something that we would have fastened the trial court if we'd gone to trial. It was a, that particular instance was not a broadcast to the general public standing on a soapbox in a village square, but we had a bankruptcy client there, and bankruptcy, one of the biggest sources of our clients is referrals from other clients. And if you have the ear of a client, and you bad mouth this attorney right in front of another attorney that's representing him, and in front of a court officer, and you seem to be ostensibly, this is a fish that's pointing from a transcript. Wow. That's the kind of thing that, it's especially toxic if it spreads word of mouth. You just, you don't want to have it happen. So do you think that saying this in a courtroom was different than if he would have stood on a soapbox in the public square? It's not, it's not legally different, because it's just a different form of broadcasting. It would be easier for somebody to say, I guess, I can understand how that would be terrible if you had an audience of a thousand people in the public square. And you might say, well, this is insignificant because this has an audience of three people. But because of a couple of two things, one of them is it's our client, and we get client's word of mouth. And because of that letter that Mr. Howard sent, which seems to say, I have the right to continue to do this every day of the week. It's important. I don't think that it's a minor and petty thing to complain about under considering those facts. And it affects the consuming public. I think that those statutes are intended to protect the public from being misled about the quality of someone's goods or services, just based on a bit of data or somebody else trying to get a competitive advantage, if the statements aren't accurate. And there's no evidence at all that those are true statements. We allegedly complain that they're not true statements. From the pleading point of view, was an answer ever final? No, there were three motions to dismiss. This is our third attempt at a complaint. Each of them was dismissed. And in each motion to dismiss, was this air reporting privilege raised? I know it was for the last. I would assume that it was on the others, but I'm not. I didn't review today to talk about the first two complaints. I understand. I think that one of the things that the opposing position is going to take is that this is a matter of opinion. And because it's a matter of opinion, per se, it can't be verified. And as such, it's not actionable. That's what their briefs and that's what their legal authorities seem to push toward. And I think that that's an invalid legal point. The Illinois Supreme Court in the Celaya case, the sites are before the court, specifically rejected that. I'll briefly quote page 840 of the opinion. You get a chance for a bottle, you can do that. Thank you. Ms. Johnson, are you going to argue? May it please the court. My name is Sarah Johnson, and along with my co-counsel, Edward Dunn, I represent defendant appellee J.B. Howell. This matter arises out of J.B. Howell's alleged statements that the plaintiff appellant, Daryl Dunham, is a liar, a cheat, and or lacks credibility. Or alternatively, out of Mr. Howell's statement that Judge Myers said that Daryl Dunham is a liar, a cheat, and or lacks credibility. Did Judge Myers call him a cheat? He didn't call him a cheat. There was a slight difference between the two transcripts. I think he said he believes that he's a liar, and he finds him to be a liar and stated that he does not think he's a very credible individual on a record in a court proceeding. Well, cheating would be a crime under some circumstances, correct? I mean, cheat, liar, they all are substantially similar terms. Most people have lied or cheated at something in their life. There was no context added as to what Daryl Dunham may have lied about or what he may have been saying Daryl Dunham lied about or what he cheated with respect to. It was just a blanket statement. About a lawyer? What? About a lawyer. Correct. Which would be different if you were talking maybe about a car salesman. I don't think it would make any difference because calling somebody a lawyer and a cheat without further context under Illinois law is merely a matter of opinion. And to clarify briefly, Daryl Dunham filed an action against Jay Howell eventually attempting to plead three causes of action. One for defamation, one for violation of the Uniform Deceptive Trade Practices Act, and one for violation of the Consumer Fraud and Deceptive Business Practices Act. Jay Howell requested this court affirm the circuit court's dismissal of Daryl Dunham's third amended complaint, which was actually a 2-619.1. So there was a 2-615 argument and a 2-619 argument.  Where can I find that? It is in my motion. It is split into two different arguments, the first part being the 2-615 and the second part being the 2-619. That's your motion? Correct. But the docket entry says 2-615. I'm not in charge of the docket and I believe that it was granted on a 2-615 basis. What do you believe that it's based on? I believe it's based on the order that the judge entered, the written order, is that he granted it based on the 2-615 arguments. So you do believe he granted it on the 615? Correct, but I believe this court is allowed to affirm the decision on any argument that appears in the record, and a 2-619 argument was made as well and is part of the record. Okay, but the appeal of the order that was entered by the court is a, at least as I read the docket entry, a 2-615 dismissal. Do you agree with that? I agree that the judge dismissed based on the 2-615 arguments in my 2-619.1 motion. Yes, I believe that he granted it based on the 2-615 arguments, but it was in fact a combined motion. Did you ever file a response that raised an affirmative defense? I filed three motions to dismiss that raised an affirmative defense. Why do you think that an affirmative defense is proper at the pleading stage for a motion to dismiss? Because in this case, the allegation is that the statement that Judge Myers called Plaintiff Appellant a liar, a cheat, and lacking in credibility was false. And there is a transcript attached to the motion to dismiss, which has those statements or substantially those statements in them. It is an official court record, which the court is allowed to rely on without any foundation according to the Deason v. Gutzler case. So I believe that it was appropriate to file a 2-619 based on that transcript. The circuit court's dismissals were proper for the following reasons. Count 1 for defamation did not allege that Howe made any false statements of fact. So that is what the one argument that the circuit court judge decided was accurate. And then 2, Count 2. So it's true that he was a liar and a cheat? Those are not statements of fact. It's not truth. It's not truth or not truth. It's the fact that the distinction between fact and opinion is a matter of law. And the court considers whether the statement is objectifiably, if you can objectively verify whether the statement is true or false. And general statements that someone is a liar or a cheat without being put into the context of any specific facts suggesting that they lied about something or cheated about something in particular are just, are merely opinions. They can't be proved as true or false. At what point in the pleading stage is that raised? Is that raised as a motion to dismiss? And is the Pearsall case a motion to dismiss? No, the Pearsall case is a motion for summary judgment. But I believe that the plaintiff still must allege a false statement of fact. It's one of the elements. And I think that the Pearsall case demonstrates that, particularly because defamation, we must remember, must be fled with clarity and particularity. And if they're alleging per se defamation, then it's an even higher standard that they have to meet, which is specificity, clearly laying out what the defamatory statements are to who they were said and when they were said. So I believe that, you know, you still need a false statement of fact. Are you saying that reading a transcript saying that he's a liar and a cheat is too indefinite? I'm saying the words somebody is a liar and a cheat are opinions because they're not objectified. You cannot objectively verify whether that's true or not. Whether somebody's ever told a lie or cheated about something in their entire life, it's not objectively, it's not something you can objectively verify. And the Pearsall case says that. It says, you know, in that case it was a claim by a broadcast commentator against his employer. And the employer said on the radio several times that he thought the commentator was a liar. He basically called the commentator a liar. And the court found that there were no separate facts at the root of that statement, which would make it capable of being objectively verified. And then the court concluded without a factual basis surrounding the allegations that someone is a liar, such a statement is an opinion and not action. Counsel, in the case here, was the plaintiff given the opportunity to put these statements in context of specific facts? And were those addressed by the two prior motions to dismiss? And for the court to dismiss with prejudice after the third bite from the apple? Correct, Your Honor. They were given three chances to put this in further context. And no further context was ever offered as to what Jay Howe may have been stating that Daryl Dunham lied about or with respect to. I anticipate that they're going to argue that this fact dichotomy is not valid under Illinois law anymore. And they're going to use a case called Costello, not the Supreme Court case, which didn't address it. But the appellate case by the Fifth District, which said we're not going to apply that. We're going to apply the innocent construction rule instead. Those rules, you know, the innocent construction rule doesn't logically relate to the fact versus opinion dichotomy. Certainly there are instances where a statement is incapable of innocent construction, but also not objectifiably verifiable as true or false. For example, if you were to call somebody a jerk or even mean, how are you going to, that's not capable of innocent construction, nor is it capable of being proved as true or false. It's just somebody's opinion. And likewise, so is calling somebody a liar, a cheater, saying they lack in credibility. The judge, you think that's just an opinion? The judge says that you, as a lawyer, lack credibility. You think that's just an opinion from a guy on the street? That's the judge's opinion, but if we get into what the judge said, that was accurately quoted. So you can't objectively verify whether the judge said somebody is a liar or a cheat. And in this case, the judge did say essentially that Daryl Dunham is a liar and lacks in credibility on the record. So that would be, in fact, a true statement. Are you saying that in Illinois to allege defamation per se, that you have to meet the standards of Twombly and Eckburn? I'm not saying Twombly and Eckburn. I'm saying you have to meet the standards under Illinois law, the one in Likowski, the one in Green, which says you have to plead those defamatory statements with clarity, particularity, specificity. And then you have to allege some kind of actual malice? No, you don't need malice necessarily. Malice is something that would come up if there's a public figure or something of that nature. This is, you failed, Daryl Dunham failed to allege a false statement of fact, that Mr. Howe made a false statement of fact about him. Because there was no statement of fact. It's just there was a statement of opinion. And likewise, the counts two and three for consumer fraud and deceptive trade practices failed for the same reason. Under Illinois law, statements of opinion are not actionable under the Consumer Fraud Act. And also, the section of the Trade Practices Act that Daryl Dunham points to as a person engages in a deceptive trade practice when in the course of his business, he disparages the services of another by a false or misleading representation of fact. It's right in the actual statute. So again, you need to have a false statement of fact. You need to allege a false statement of fact for all of these causes of action. Moreover, that neither the Deceptive Trade Practices Act nor the Consumer Fraud Act apply to regulate the conduct of Howe as an attorney. Daryl Dunham is trying to argue both ways. Mr. Howe wasn't acting as an attorney. He was just a guy off the street. But then he was. He also was because he was doing this to gain an unfair competitive advantage as an attorney. Well, he can't have it both ways. Either these statements are related to Howe's activities as an attorney or they're not. And I would put forth the way this was alleged that they are related. He has alleged he's directly connected Jay Howe's statements to his activities as an attorney. In the Crike v. Leader case, the Illinois Supreme Court held that consumer fraud does not apply to attorneys practicing law. And granted, that case did involve a cause of action for violation of consumer fraud by a former legal guardian against her attorney alleging excessive and unreasonable fees. However, what's important to take from that case is the reasoning. The court found that regulation of attorneys is the prerogative of the court, which administers a comprehensive scheme regulating the conduct of attorneys through Illinois Professional Rules of Conduct and the Attorney Registration and Disciplinary Committee. And that this scheme applies not only to attorneys' fees, but it also provides discipline for attorneys who engage in fraudulent, dishonest, deceitful conduct and any misrepresentation. And reasoning of Crike has been extended to other situations involving attorneys, including the Cosador case, which was a Fifth District case, where it said the Consumer Fraud Act does not regulate the conduct of attorneys, even when the cause of action is pursued by a third party outside the attorney-client relationship. The United States District Court for the Northern District of Illinois, applying Illinois law, has seized that opinion and said in a case called Corvus, the Consumer Fraud Act does not apply to the conduct of attorneys during pretrial investigation or when soliciting potential clients. Why? Because the rules of professional conduct reach beyond the attorney-client relationship to regulate the conduct of attorneys with non-clients, potential clients, actual adversaries. The reasoning of Crike and his progeny can be extended to both statutes as they both involve unfair and deceptive trade or business practices. Dunham alleged that Howe disparaged his services and or engaged in unfair competition with his comments that Dunham, that Darryl Dunham is a liar, a cheat, and or lacks credibility in order to gain a competitive edge over Dunham as their alleged competitors for bankruptcy clients in the Southern District of Illinois. Well, the rules of professional conduct extend to solicitation, advertising, and communications concerning a lawyer's services. They provide for discipline of attorneys who engage in fraudulent, dishonest, and or deceitful conduct. If you look at Rule 7.1, Rule 8.4, these are regulated via the Illinois rules of professional conduct. Have you found a case that says a lawyer cannot be sued for defamation per se? No. So putting those actions aside, one of the elements of defamation per se is words that impute a person is unable to perform or lacks integrity in performing his employment duties. Lacks integrity. Do you think that the language used is similar enough to lacks integrity? I think that it is similar, but here's the problem. There has to be a false statement of fact. Before you even get to what that statement, if that statement impugns dishonesty or integrity, there has to be a false statement of fact that impugns dishonesty or integrity.  So you're arguing that every statement made has to be capable of some kind of credible, tangible evidence. I'm saying under Illinois law, it has to be objectifiably, you have to be able to objectifiably verify whether it's true or false. So if someone under certain circumstances that would show malice or thought says, that guy, he lacks integrity in the profession of his employment, that would not be enough for you? I don't think so. It would have to be, you know, and where the court, where the Illinois case law gets into the distinction is, calling somebody a liar can be deemed a fact if, if you say, Darrell Dunham said A, B, and C, he's a liar. Suggesting that he lied when he said A, B, and C. And we can go figure out whether or not A, B, and C are actually, you know, true or not. But if you just make the statement, somebody is a liar, there's, without anything else, under Illinois law, that's an opinion. And despite what I believe that the, Darrell Dunham's counsel is going to say in Celaya Technologies versus Specialty Publishing, the case he's going to bring up, they did apply the fact versus opinion dichotomy. They found that it wasn't, they found that it was an opinion, but. At what stage of the proceedings was it applied? I'm not sure. I'm not sure. It might have been, it was quite a lengthy opinion. I'm not, I'm not certain. It involved written, it involved written, written. The thing that I keep coming back to here is that you're raising all these affirmative defenses in a motion to dismiss, and we don't even have the facts of it, the complaint at issue, the 615 versus the 619. And I understand your argument that you filed a joint motion, but the docket entry is very clear. As well as the written order which says it's relying on the Pearsall case, which is the affirmative defense case. No, Pearsall is not the affirmative defense case. Pearsall is the case which says that you, Pearsall is most certainly not an affirmative defense case. Pearsall is a case that says you didn't meet the element of pleading that plaintiff, that the plaintiff alleged that the defendant made a false statement of fact about the plaintiff. It's not verifiable. In order, yeah, in order to plead. Is that not an affirmative defense? No, it's not an affirmative defense. In order to plead defamation, you must plead, the plaintiff must allege that defendant made a false statement of fact about the plaintiff. That's the number one element of defamation. But you're adding on that that has to be proven. No, I'm not adding on that it has to be proven. If he would have said, if there would have been allegations that said, Darryl Dunham said A, B, and C, he's a liar. Okay, we can argue that he didn't, that we didn't say those things and that those things are true. And, you know, that wouldn't be a proper 2615. But what we're saying is there's not enough context here to make this a statement of fact. This is not something that's ever going to be objectifiably verified. You're not going to be able to verify it as true or false, the statement that someone's a liar. It's not actionable. It's not a statement of fact. Have you found a case that says that? Pearsall says that, yes. And so does. About a liar. Yes, about a liar. It's never verifiable. And without a specific context, it's not verifiable. Again, if you said Darryl Dunham said A, B, and C, he's a liar, suggesting that he lied about A, B, and C, that would be a different story. But in Pearsall, they said if you just say somebody's a liar, that's not a statement of fact. That's not actionable. It's an opinion. Okay. Thank you. Is she right on Pearsall? She's wrong on Pearsall. Pearsall, the case was dismissed after a motion for summary judgment. There was eight years of discovery. And in a motion for summary judgment, you're agreed upon facts and your affidavits so that there's a body of facts before the court. And if there are no disaffected dispute, then it's a matter to be decided. It's just a matter of law. In that opinion, they said you have, after eight years of being allowed with great leeway under discovery, after eight years, you haven't put any facts forward to say that there's been a false fact. So it's procedurally different and it's a mischaracterization of what the case said. Also, in that case, we were talking about color commentators for sporting events. They were being accused of being liars. And they wanted to allege that this was defamation per se. And so the Pearsall Court reiterated the different elements of what could be defamation per se. And they tried to bring it under this being unfit for your profession. And they said being truthful as a color commentator is not a necessary element that you have to have to be eligible to be a color commentator. You can lie, and it doesn't make you ineligible or less qualified to do that job. The practice of law is totally night and day different from that. You have to be believable. You have to have integrity. You have to have truthfulness or you lose your stock in trade. You're not going to go anywhere if courts don't believe you as a matter of course and if your clients don't believe you as a matter of course. So whereas it's not defamation per se in the Pearsall Court, according to that court, when you're talking about a lawyer and you're saying you're a liar, it is defamation per se. Now, again, they're wanting to seize on this dichotomy of fact and opinion. The Illinois Supreme Court in Celaya said this, and I'll give you a recording of that opinion. There is no artificial distinction between opinion and fact. A false assertion of fact can be defamatory even when couched within an apparent opinion or rhetorical hyperbole. Expressions of opinion may often imply an assertion of objective fact, and in such cases would be considered action. Here we have – we're talking about a transcript of an opinion. Under that context, when somebody recites what a judge said, that implies that there was a fact finding. It implies that there's some factual basis behind it more than just an opinion. Also, it would be crazy – it's just logically not right to say we're going to impose on a trial judge the obligation to predetermine whether this fact is provable or not. And we're going to do that to that judge without allowing there to be any discovery in any trial, any testimony. The judge is just supposed to automatically preordain to know whether that's an objectifiably verifiable fact or not. And he gets to render that opinion and dismiss the case if he says you couldn't prove that without any discovery. Well, what if I was to say about a surgeon, he's got to shake hands. Don't trust him. Don't go before that surgeon and cut their artery. Wouldn't that be talking about his ability to do his job and not be slander per se? But under their reasoning, well, that's just a matter of opinion. How do you verify that he's not got to shake hands? Well, if Mr. Dunn was a liar, shouldn't the burden be on them to prove that he's a liar? Provide one witness that told one lie ever in his life. You can prove that. Prove that he cheated, one person. Well, if I brought a products liability action and I said, well, Ford gave you a bad car and it had defective brakes or defective steering mechanism, but I can't prove that. I shouldn't be able to prove it if I'm saying it. Otherwise, I shouldn't be saying it. And if I said it, well, it's just a matter of opinion. I would expect that I should be subject to being sued for some kind of slander, but impugning a surgeon or a product without any basis. But if there had been a lie, if there had been some kind of lie before tribunal, which this thing implies, you'd go back and you could look at the transcripts. You could go back to the evidentiary backing of that and you could say, there was a finding of that. It did lie. There was nothing like that. And there was no opportunity to defend. But under their reading of what's fair, he should be allowed to continue to badmouth the integrity of an attorney forever without any evidence. Thank you very much. Thank you, others. Thank you both for your comments. That will be taken under advisement and a disposition will be issued forthwith.